**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

ZEVIN CURTIS WARD,

Plaintiff,

v.

COTTMAN TRANSMISSION SYSTEMS, LLC, COTTMAN TRANSMISSION CENTER, INC., COTTMAN MAINTENANCE SERVICE LIMITED LIABILITY COMPANY, and LOU GUARINI, individually,

Defendants.

Civil No. 18-2155 (NLH/JS)

**OPINION**

**APPEARANCES:**

CAROLINE HOPE MILLER
DEREK SMITH LAW GROUP PLLC
1835 MARKET STREET, SUITE 2950
PHILADELPHIA, PA 19103

*Attorney for Plaintiff Zevin Curtis Ward.*

AARON VAN NOSTRAND
RAQUEL SARA LORD
GREENBERG TRAURIG LLP
500 CAMPUS DRIVE
SUITE 400
P.O. BOX 677
FLORHAM PARK, NJ 07932-0677

*Attorneys for Defendant Cottman Transmission Systems, LLC.*

**HILLMAN, District Judge**

This case concerns claims under Title VII of the Civil Rights Act of 1964 (“Title VII”), 42 U.S.C. § 1981, the New

Jersey Law Against Discrimination ("NJLAD"), and the Fair Labor Standards Act ("FLSA") for discrimination against Plaintiff Zevin Curtis Ward on the basis of race, color, and national origin, retaliation, creation of a hostile work environment, and violations of FLSA. Presently before the Court is Defendant Cottman Transmission Systems, LLC's ("CTS") Motion to Dismiss Plaintiff's Amended Complaint. Defendant CTS's Motion to Dismiss will be denied for the reasons expressed below.

## BACKGROUND

This Court takes its recitation of facts from Plaintiff's Amended Complaint. In August 2016, Plaintiff began working as a mechanic at an auto repair franchise – "Cottman Transmission"[1] - located on East Kings Highway in Maple Shade, New Jersey. Defendant Lou Guarini owns Cottman Transmission. Plaintiff alleges that CTS contracted with Cottman Transmission Center, Inc. and Cottman Maintenance Service Limited Liability Company (the "Cottman Defendants") to operate Cottman Transmission.

Of special note for this opinion are the allegations concerning CTS and its relationship to Plaintiff:

---

[1] This Court does not use the term "Cottman Transmission" in the same manner as Plaintiff used it in his Amended Complaint. Instead, the Court uses this term to refer to the actual franchise located at that address. As explained supra and infra, the Court uses CTS to refer to the moving defendant and the "Cottman Defendants" to refer to the non-moving entity defendants.

- "At all times material, Defendant COTTMAN TRANSMISSION SYSTEM, LLC contracted with Defendant COTTMAN TRANSMISSION CENTER, INC. and Defendant COTTMAN MAINTENANCE SERVICE LIMITED LIABILITY COMPANY for the continued operation of an auto repair franchise located at 135 East Kings Highway, Maple Shade, New Jersey, 08052[;]"

- "At all times material, Defendant COTTMAN TRANSMISSION SYSTEM, LLC instructed Defendant COTTMAN TRANSMISSION CENTER, INC. and Defendant COTTMAN MAINTENANCE SERVICE LIMITED LIABILITY COMPANY on the methods, procedures, and techniques of operating above mentioned auto repair shop, including business procedures, evaluation of personnel, hours of operation, inspection[;]"

- "At all times material, Defendant COTTMAN TRANSMISSION SYSTEM, LLC, Defendant COTTMAN TRANSMISSION CENTER, INC., and Defendant COTTMAN MAINTENANCE SERVICE LIMITED LIABILITY COMPANY (hereinafter collectively referred to as Defendant and/or 'COTTMAN TRANSMISSION') were Plaintiff's joint and solo employer[;]"

- "At all times material, Lou Guarini (hereinafter Defendant and/or "Guarini") (White, Caucasian male) was and still is employed by Defendants COTTMAN TRANSMISSION[;]" and

- "At all times material, Defendant Guarini was and remains the Owner of Defendant COTTMAN TRANSMISSION[.]"

(Am. Compl. ¶¶ 8-9, 11-14.)

Plaintiff alleges that almost immediately upon his hiring, he was subjected to harassment by Guarini on the basis of his race, national origin, and color. Plaintiff also alleges that he was routinely forced to work 56 hours per week without being paid the overtime rate mandated by the FLSA.[2] After about a year

[2] As pleaded, Plaintiff states: "Plaintiff did routinely work approximately fifty-six (56) hours per week." (Am. Compl. ¶ 56.)

of this behavior, under the belief that Guarini would not alter his actions or listen to his complaints, Plaintiff was constructively discharged on August 21, 2017. In October 2017, after Plaintiff was unable to find other work, he was called by a Victoria Albright and promised that Guarini would not continue his offensive behavior. Plaintiff returned to Cottman Transmission and continued to work under Guarini. Guarini allegedly resumed his harassing, offensive behavior.

At some point, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"). On October 30, 2017, Plaintiff informed Guarini of this charge, and Guarini told Plaintiff if the EEOC charge did not "go away," Plaintiff would not be permitted to work for Cottman Transmission. This led to the second constructive discharge.

Plaintiff filed a complaint in this Court on February 15, 2018 alleging seven counts under 42 U.S.C. § 1981, Title VII, NJLAD, and FLSA. These counts generally assert claims of discrimination, retaliation, aiding and abetting, and violations of FLSA. Defendant CTS filed its Motion to Dismiss the Complaint on May 11, 2018. In response, Plaintiff filed the instant Amended Complaint on June 1, 2018. Thereafter, Defendant CTS filed its Motion to Dismiss the Amended Complaint on June 15, 2018. This motion is fully briefed and ripe for adjudication.

## ANALYSIS

### A. Subject Matter Jurisdiction

This Court possesses subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1367.

### B. Motion to Dismiss Standard

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.,

40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (alterations in original) (citations omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009)). A court may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in

the coffin for the 'no set of facts' standard that applied to federal complaints before Twombly."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570).

**C. Motion to Dismiss**

Defendant CTS essentially asserts one overall argument: Plaintiff has failed to sufficiently plead any claims against it under the standards articulated by case law in this Circuit and the Federal Rules of Civil Procedure. This argument can be broken down into four specific parts. First, because Plaintiff has combined CTS with the other Cottman Defendants in the allegations in the Amended Complaint, he has failed to meet his pleading obligations as to CTS and all claims against it must be dismissed. Second, because Plaintiff has presented no facts that could plausibly show Defendant CTS was his employer or a joint employer, all claims must be dismissed against CTS. Third, because Plaintiff does not sufficiently identify which particular Defendant took which actions, all claims must be dismissed against CTS. Fourth (and in the alternative), because Plaintiff does not meet the heightened pleading requirements in this Circuit for a FLSA overtime claim, the FLSA claim against CTS must be dismissed.

This Court will address each in turn. Before it does so, the Court must first dispose of requests made by both parties to consider an extraneous document, a license agreement purportedly between Defendants CTS and Guarini (the "License Agreement"). As explained supra, in considering a motion to dismiss, a court may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). The License Agreement is not expressly addressed in the Amended Complaint, an exhibit attached to the Amended Complaint, or a matter of public record.

Thus, the Court must look to Federal Rule of Civil Procedure 12(d) and the case law interpreting this rule in order to determine the proper course forward. Technically, Rule 12(d) provides that a court should treat a Rule 12(b)(6) or 12(c) motion as a motion for summary judgment whenever matters outside the pleadings are considered. But, the Third Circuit has clarified that "[m]erely attaching documents to a Rule 12(c) [or 12(b)(6)] motion . . . does not convert it to a motion under Rule 56." CitiSteel USA, Inc. v. Gen. Elec. Co., 78 F. App'x. 832, 834-35 (3d Cir. 2003). In ruling on a motion to dismiss, a court has "'discretion to address evidence outside the complaint

. . . '" without converting the motion, but only in limited circumstances. Id. at 835 (quoting Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 559 (3d Cir. 2002)). One of those situations is when "an undisputedly authentic document" is attached "as an exhibit to a motion to dismiss [and] the plaintiff's claims are based on the document." Id. (quoting PBGC v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)) (internal quotation marks omitted).

This Court declines, in its discretion, to convert this motion into one for summary judgment.[3] But, it will consider the License Agreement because Plaintiff's claims are based, in part, on the document[4] and neither party disputes its authenticity. With that in mind, this Court will address CTS's arguments.

a. Whether Plaintiff's Failure to Differentiate Corporate Defendants is Fatal to Claims Against CTS

Defendant CTS argues Plaintiff has failed to meet his pleading obligations because he has lumped in CTS with the other Cottman Defendants in the Amended Complaint. CTS cites Grant v. Turner for the proposition that a failure to differentiate corporate defendants in pleadings requires dismissal. 505 F.

[3] The Court finds it unwise to do so at the current time, because neither party requests a conversion and discovery has not yet commenced.

[4] It appears parts of Plaintiff's allegations are based on this document as the Amended Complaint mentions an agreement between CTS and the Cottman Defendants. (See Am. Compl. ¶ 8.)

App'x 107, 112 (3d Cir. 2012). Plaintiff does not provide a specific argument in response, but generally states the Amended Complaint is properly pleaded.

This Court finds that Grant is distinguishable from the instant case. The Grant case concerned a putative class action under RICO alleging various individual and corporate defendants "were involved in creating and perpetuating fraudulent travel clubs." Id. at 109. The causes of action were analyzed under Federal Rule of Civil Procedure 9(b), which requires a heightened pleading standard for the predicate acts alleged that were based on fraud. Id. at 111-12. Specifically, Rule 9(b) was the basis for the dismissals in the Grant case. Id. ("Plaintiffs failed to meet the heightened pleading standard with regard to [certain defendants] . . . ."). Further, the Court vacated dismissal of some of the defendants in the action who were lumped together – even under the Rule 9(b) heightened pleading standard. Id. at 112.

Thus, it would not follow that Plaintiff has failed to plead claims against CTS correctly on these grounds. These claims are not controlled by Rule 9(b) and cannot be dismissed under that Rule. This Court will deny the Motion to Dismiss on these grounds.

b. Whether Plaintiff has Plausibly Claimed CTS is a Joint Employer of Plaintiff

Second, this Court considers whether sufficient allegations exist to show Defendant CTS is a joint employer of Plaintiff. In the Third Circuit, two different tests are used – depending on the statute under which the claim is brought – to determine joint employment.

Under Title VII, the Third Circuit employs a multi-factor test to determine whether the alleged employer exercises sufficient control over the manner and means of work and thus whether an employee-employer relationship exists. Faush v. Tuesday Morning, Inc., 808 F.3d 208, 214 (3d Cir. 2015). Those factors include, but are not limited to:

> "the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the [alleged employer] has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the [alleged employer]; whether the [alleged employer] is in business; the provision of employee benefits; and the tax treatment of the hired party."

Id. (quoting Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323-24 (1992)).[5]

[5] The same test is applied to NJLAD claims. See Plaso v. IJKG, LCC, No. 11-5010 (JLL/MAH), 2013 U.S. Dist. LEXIS 70757, at *19-20 (D.N.J. May 14, 2013) (applying the same joint employer test to Title VII and NJLAD claims). Thus, the NJLAD claims rise and fall with Plaintiff's Title VII claims in this respect.

To determine whether joint employment exists under FLSA, the Third Circuit employs a non-exhaustive four-factor test. In re Enter. Rent-A-Car Wage & Hour Emp't Practices Litig., 683 F.3d 462, 469 (3d Cir. 2012). The Third Circuit stressed that a determination of joint employment must be based on "the total employment situation" and the "economic realities" of the relationship. Id. (citations and internal quotation marks omitted). Those factors are:

> (1) authority to hire and fire employees;
>
> (2) authority to promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours;
>
> (3) day-to-day supervision, including employee discipline; and
>
> (4) control of employee records, including payroll, insurance, taxes, and the like.

Id.

Plaintiff has adequately pleaded that CTS is a joint employer in his Amended Complaint. Specifically, it is alleged that CTS "instructed" the Cottman Defendants "on the methods, procedures, and techniques of operating [Cottman Transmission], including business procedures, evaluation of personnel, hours of operation, [and] inspection." (Am. Compl. ¶ 9.) These allegations, as explained by Plaintiff, are supported by the undisputed License Agreement. Per the License Agreement, CTS has the power to:

- Set the minimum days of the week and hours per week a location is open;
- Set the methods, procedures, and techniques used for work at a location;
- Inspect the premises, books, and records;
- Meet with the location's employees and customers; and
- Most importantly, "assist [the location] in finding and evaluating personnel."

(Pl.'s Opp'n Br. 14-15 (citing License Agreement §§ 5, 7.)

As the parties know, the definition of employer and employee under the remedial statutes at-issue are broad and capacious. Those definitions are broad enough to pull Defendant CTS into their orbit – and into this case. While Plaintiff's pleading is imperfect, the Rules do not require perfection, merely plausibility. Under the Title VII test, which has as its touchstone the control over the manner and means of work, it is plausible that CTS could be a joint employer. CTS can control the days and times during which work may be done, the methods and techniques under which work should be done, and has a say in what personnel are hired. While this does not address every factor in the test, the Court finds joint employment has been plausibly pleaded here under Title VII.

The same applies to the FLSA test for joint employment. The touchstone of the FLSA test is the economic realities of the

total employment situation. Under the factors, this Court finds Plaintiff has pleaded CTS has some authority in personnel decisions, including hiring; requires compliance with legal local, state, and federal laws; and sets the conditions of work – both the times and manner - and may perform inspections. Again, while the pleading is imperfect and not exceedingly specific, it is neither implausible nor fatally deficient.

This Court does not opine here on whether CTS is a joint employer of Plaintiff, but merely notes its plausibility. The determination of that question is likely better left for the discovery process and ultimately for the trier of fact. For the same reasons as expressed supra, the claims under 42 U.S.C. § 1981 are not deficient. See Reid v. Exelon Corp., No. 17-4043 (RBK/AMD), 2018 U.S. Dist. LEXIS 90729, at *9-11 (D.N.J. May 30, 2018) (holding the same joint employment test as described supra applies to a § 1981 claim).

c. Whether Plaintiff's Pleadings Are Insufficient Because Plaintiff Does Not Plead which Defendants Committed which Acts

Third, CTS argues Plaintiff's Amended Complaint is deficient because it does not explain which Defendants have committed what actions. Defendant CTS argues these deficiencies require the Court to dismiss the Complaint on grounds of vagueness or implausibility, citing three particular cases.

Plaintiff again does not directly rebut this argument, but generally asserts the Amended Complaint is sufficiently pleaded.

To address Plaintiff's argument, this Court will address each case cited in turn. First, the Court will address Transportation Insurance Company v. American Harvest Baking Company, Inc., which was decided by the undersigned. No. 15-cv-663 (NLH/AMD), 2015 U.S. Dist. LEXIS 168018 (D.N.J. Dec. 16, 2015). Claims made in counterclaims and a third-party complaint were dismissed under the heightened pleading standards of Rule 9(b). Id. at *27. As this Court noted in that case, "Rule 9(b) is a standard separate and apart from Rule 12(b)(6) and provides an independent basis for dismissal of a complaint." Id. at *26. This case is inapplicable to the current matter because the current matter is not governed by Rule 9(b), but by Rules 12(b)(6) and 8.

Second, this Court will address Japhet v. The Francis E. Parker Memorial Home, Inc., which was decided in this District. No. 14-cv-1206 (SRC), 2014 U.S. Dist. LEXIS 105134 (D.N.J. July 31, 2014). The Court in this action dismissed claims under the Family and Medical Leave Act ("FMLA") and NJLAD against an individual defendant for failure to plead "any conduct specifically undertaken by" the individual defendant. Id. at *1-2. That is not the case here. The Amended Complaint specifically relates what the individual defendant, Guarini, did

which allegedly violates the various employment statutes at issue. (Am. Compl. ¶¶ 16-35.) Here, as opposed to Japhet, it is clear why Defendant CTS is in this case: Plaintiff alleges CTS was one of his employers and therefore is responsible for the actions taken by Guarini.

Third, this Court will address Watkins v. ITM Records, which is a decision from the Eastern District of Pennsylvania. No. 14-cv-1049 (RAL), 2015 U.S. Dist. LEXIS 96610 (E.D. Pa. July 24, 2015). In this case, the court dismissed claims for copyright infringement because the plaintiff failed to state a specific act by a defendant which could give rise to a copyright infringement claim. Id. at 5-8. That is not the case here. As discussed supra, Plaintiff has specifically alleged improper acts committed by Guarini in detail. Watkins is also distinguishable.

None of these cases requires this Court to dismiss Plaintiff's claims against Defendant CTS. The cases are distinguishable and inapposite. What further notice Defendant wishes Plaintiff to give them is unclear. But, it is clear that Plaintiff has given them enough. The Amended Complaint is specific in describing the discriminatory actions taken by Guarini against Plaintiff. (Am. Compl. ¶¶ 16-35.) Obviously, an entity may only act through its agents. It is clear that Plaintiff alleges Defendant CTS is liable for the allegedly

discriminatory actions Guarini took against Plaintiff. If Defendant CTS believes it cannot legally be held responsible, based on the facts alleged, it should file an appropriate motion stating its position at the appropriate time.[6] It does not argue that here. This Court will deny the Motion to Dismiss on these grounds.

d. Whether Plaintiff's Amended Complaint Meets the Heightened Pleading Standard under the FLSA

Finally, Defendant CTS argues Plaintiff's FLSA claim must be dismissed for deficient pleading. Specifically, Defendant cites to recent Third Circuit case law instituting a heightened pleading standard when a plaintiff brings a FLSA claim for uncompensated overtime hours. Plaintiff counters that his pleadings meet the Third Circuit standard.

The Third Circuit standard was explained in Davis v. Abington Memorial Hospital, 765 F.3d 236 (3d Cir. 2014). There, it decided to adopt the standard from the Second Circuit, which holds that "in order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege [forty] hours of work in a

[6] For example, Courts in this Circuit have long held that "the reference to agents in the definition of employer is simply to incorporate respondeat superior liability into Title VII." Behrens v. Rutgers Univ., No. 94-cv-358 (JBS), 1996 U.S. Dist. LEXIS 22311, at *15-17 (D.N.J. Mar. 29, 1996) (internal quotations and citations omitted). If CTS believes that type of liability does not apply to the claims in this action, it should have moved on those grounds.

given workweek as well as some uncompensated time in excess of the [forty] hours." Id. at 241-42 (quoting Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 114 (2d Cir. 2013)) (alterations and emphasis in original). Additionally, it noted that plausibility – as in all cases – is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 242-43 (quoting Iqbal, 556 U.S. at 679).

More specifically, the Third Circuit found allegations that a plaintiff "typically" worked between "thirty-two and forty hours per week" and "frequently" worked overtime did not state a plausible FLSA overtime claim. Id. at 242. The reason:

> None of the named plaintiffs has alleged a single workweek in which he or she worked at least forty hours and also worked uncompensated time in excess of forty hours. Of the four named plaintiffs who allege that they "typically" worked at least forty hours per week, in addition to extra hours "frequently" worked during meal breaks or outside of their scheduled shifts — Davis, Erica Williams, Gerardina Ilaria, and Diane Read — none indicates that she in fact worked extra hours during a typical (that is, a forty-hour) week.

Id. at 243. In other words, the plaintiffs in Davis never alleged that the "typical" week overlapped with the "frequent" occurrences which could have led to uncompensated overtime. The Third Circuit explained, however, "that a plaintiff [need not] identify the exact dates and times that she worked overtime." Id. In fact, the Third Circuit states:

> a plaintiff's claim that she 'typically' worked forty hours per week, worked extra hours during such a forty-hour week, and was not compensated for extra hours beyond forty hours he or she worked during one or more of those forty-hour weeks, would suffice.

Id.

Here, Plaintiff alleges he "did routinely work approximately fifty-six (56) hours per week" and that CTS failed to pay Plaintiff the required overtime rate pursuant to 29 U.S.C. § 207. (Am. Compl. ¶¶ 65, 67.) This meets the Third Circuit test.

Plaintiff has stated that he typically worked forty hours a week, typically worked sixteen additional hours above those forty hours, and was not compensated for his overtime. This meets the example given by the Third Circuit in Davis. It is also sufficiently similar to Brown v. Apothaker & Assocs., P.C., a case concerning this exact issue and decided by the undersigned. No. 17-cv-3994 (NLH/JS), 2018 U.S. Dist. LEXIS 56578, at *2-5 (D.N.J. Apr. 3, 2018) (finding similar allegations "satisfy the Third Circuit requirements to plead an overtime wage claim" under the FLSA). While Plaintiff's pleadings are not exemplary, they are sufficient.[7] Accordingly, this Court will deny the Motion to Dismiss on these grounds.

[7] An example of better pleadings can be found in Jones v. SCO, SilverCare Operations LLC, (which CTS cites in its moving brief) where Plaintiffs provided more specific pleadings supported by exemplar pay stubs. No. 13-7910 (NLH/AMD), at *6-11 (D.N.J.

**CONCLUSION**

For the reasons stated herein, this Court will deny Defendant CTS's Motion to Dismiss.

An appropriate Order will be entered.

Date: February 14, 2019
At Camden, New Jersey

s/ Noel L. Hillman
NOEL L. HILLMAN, U.S.D.J.

Oct. 23, 2014). But, this Court did not state in that case that this was a new minimum pleading standard, but rather that the pleadings were sufficient.