**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

ZEVIN CURTIS WARD,

    Plaintiff,

v.

COTTMAN TRANSMISSION SYSTEMS,
LLC, COTTMAN TRANSMISSION
CENTER, INC., COTTMAN
MAINTENANCE SERVICE LIMITED
LIABILITY COMPANY, and LOU
GUARINI, individually,

        Defendants.

No. 1:18-cv-02155-NLH-MJS

**OPINION**

---

**APPEARANCES**:

CAROLINE HOPE MILLER
SAMUEL CORDRAY WILSON
DEREK SMITH LAW GROUP PLLC
1835 Market Street, Suite 2950
PHILADELPHIA, PA 19103

    *Attorney for Plaintiff Zevin Curtis Ward.*

AARON VAN NOSTRAND
RAQUEL SARA LORD
GREENBERG TRAURIG LLP
500 CAMPUS DRIVE
SUITE 400
P.O. BOX 677
FLORHAM PARK, NJ 07932-0677

    *Attorneys for Defendant Cottman Transmission Systems, LLC.*

**HILLMAN**, District Judge

    Before the Court is defendant Cottman Transmission Systems,

LLC's ("CTS") motion for summary judgment.  (ECF 60).  For the

reasons expressed below, the Court will deny the motion.

## BACKGROUND

In August 2016, Plaintiff began working as a mechanic at an auto repair franchise – "Cottman Transmission"[1] - located on East Kings Highway in Maple Shade, New Jersey.  Defendant Lou Guarini owns Cottman Transmission.  Plaintiff alleges that CTS contracted with Cottman Transmission Center, Inc. and Cottman Maintenance Service Limited Liability Company to operate Cottman Transmission.

Plaintiff contends that almost immediately upon his hiring, he was subjected to harassment by Guarini on the basis of his race, national origin, and color.  Plaintiff also contends that he was routinely forced to work 56 hours per week without being paid the overtime rate mandated by the Fair Labor Standards Act, 29 U.S.C. § 207 (the "FLSA").  After about a year of this behavior, under the belief that Guarini would not alter his actions or listen to his complaints, Plaintiff was constructively discharged on August 21, 2017.  In October 2017, after Plaintiff was unable to find other work, he was called by a Victoria Albright and promised that Guarini would not continue his offensive behavior.  Plaintiff returned to Cottman

---

[1] This Court does not use the term "Cottman Transmission" in the same manner as Plaintiff used it in his Amended Complaint. Instead, the Court uses this term to refer to the actual franchise located at that address.

Transmission and continued to work under Guarini.  Guarini
resumed his harassing, offensive behavior.

At some point, Plaintiff filed a charge with the Equal
Employment Opportunity Commission ("EEOC").  On October 30,
2017, Plaintiff informed Guarini of this charge, and Guarini
told Plaintiff if the EEOC charge did not "go away," Plaintiff
would not be permitted to work for Cottman Transmission.  This
led to the second constructive discharge.

Plaintiff filed a complaint in this Court on February 15,
2018 alleging seven counts under 42 U.S.C. § 1981, Title VII of
the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., the
New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1, et
seq. (the "NJLAD"), and FLSA.  These counts generally assert
claims of discrimination, retaliation, aiding and abetting, and
violations of FLSA.  Defendant CTS filed its Motion to Dismiss
the Complaint on May 11, 2018.  In response, Plaintiff filed the
Amended Complaint on June 1, 2018.

Thereafter, Defendant CTS filed its Motion to Dismiss the
Amended Complaint on June 15, 2018.  In that motion, CTS argued
that dismissal of the claims against them was appropriate
because Ward had not adequately pled which actions were taken by
which defendant, that there was no employer-employee
relationship between CTS and Ward, and that Ward did not meet
the pleading requirements to show that he was owed overtime pay

3

under the FLSA.  (ECF 36 at 7).  The Court denied that motion,

holding that Ward had plausibly pled his claims against CTS.

(Id. at 20).

CTS now moves for summary judgment on all claims against

it.  The thrust of CTS' arguments ultimately distills into the

issue of whether it was Ward's employer and responsible for

Guarini's alleged actions.  (ECF 60).  The Court takes each of

CTS's arguments in turn.

## DISCUSSION

Summary judgment is appropriate where the Court is

satisfied that the materials in the record, including

depositions, documents, electronically stored information,

affidavits or declarations, stipulations, admissions, or

interrogatory answers, demonstrate that there is no genuine

issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law.  Celotex Corp. v.

Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such

that a reasonable jury could return a verdict in the nonmoving

party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248 (1986).  A fact is "material" if, under the governing

substantive law, a dispute about the fact might affect the

outcome of the suit.  Id.  In considering a motion for summary

judgment, a district court may not make credibility

4

determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).  When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.  Scott v. Harris, 550 U.S. 372, 381 (2007).

## I.  **Analysis**

The Court will deny CTS' motion for summary judgment as

there is a genuine issue of material fact as to whether it should be considered Ward's employer.  The Court begins by discussing Ward's claims brought pursuant to § 1981, Title VII and the NJLAD.  Those claims are analyzed under the same standard.  Carvalho-Grevious v. Delaware State Univ., 851 F.3d 249, 256 (3d Cir. 2017) ("The substantive elements of a racial discrimination claim under § 1981 are generally identical to the elements of an employment discrimination claim under Title VII.") (internal quotation marks and alterations omitted); Victoria v. Fluor Enterprises, Inc., No. 2015 WL 5822056, at *3 (D.N.J. Oct. 2, 2015) ("The standards applied to claims arising under § 1981 and the NJLAD are the same.")

To prevail on a claim of racial discrimination under any of these laws one must show "(1) [they] suffered intentional discrimination because of [their] sex, race, familial status, or marital status; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) the existence of respondeat superior liability." McDonald v. Ingerman Mgmt. Co., 2020 WL 5743069, at *7 (D.N.J. Sept. 25, 2020).

The crux of CTS's argument focuses on the fifth element of respondeat superior and boils down to the contention that it did not have sufficient control over Ward and employment decisions to render it an employer subject to liability for discriminatory comments made by Guarani.  As the Court mentioned in its Opinion on CTS's motion to dismiss, the Court looks to the factors enumerated under Faush v. Tuesday Morning, Inc., 808 F.3d 208, 214 (3d Cir. 2015) to determine whether an employer-employee relationship exists for the claims alleged under § 1981, Title VII and the NJLAD.  See Ward v. Cottman Transmission Sys., LLC, 2019 WL 643605, at *4 (D.N.J. Feb. 14, 2019).  These factors include, but are not limited to:

> "the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the [alleged employer] has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the [alleged employer]; whether the [alleged employer] is in business; the provision of employee benefits; and the tax treatment of the hired party."

Id. (quoting Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323-24, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992)).

The record shows competing evidence on the issue of an employer-employee relationship and the parties disagree about the amount of control that CTS actually had.  To be sure, it does not appear to be in dispute that CTS was not specifically

7

involved in hiring Ward and it does not appear that CTS furnished tools to Ward.  (ECF 60-4, Deposition Transcript of Michael J. Pekula ("Pekula Depo") at 129:15-16 ("Cottman did not supply any tools or equipment[.]"); id. at 130-20-23 (stating that Cottman had never heard of Ward prior to the initiation of this legal case).).  CTS also was not responsible for paying Ward and did not provide health benefits.  (Id. at 130:2-12).  The real dispute concerns how much control CTS had regarding hiring decisions and day to day management of the franchise location.

The franchising agreement between CTS and Guarani shows that CTS could help its franchisees with hiring.  (ECF 60-3 at 15 ("COTTMAN agrees to. . . assist operator in finding an evaluating personnel[.]")  Similarly, the agreement required franchisees to retain "a staff of trained employees sufficient to operate the CENTER in accordance with this Agreement" and mentioned possible required training by CTS. (Id. at 14; Pekula Depo at 51:13-18. (stating that if CTS discovered that Guarini had not hired a qualified technician to service cars, CTS would require him to do so)).  One of CTS's representatives testified, though, that those rights were not really ever enforced and so Ward cannot be considered a CTS employee.  (Pekula Depo at 49:12-50:3 (stating that CTS never actually enforced the provision in the agreement allowing it to exercise hiring

input)).

The parties also dispute whether CTS exercised control over the hours that the center had to be open, and thus, the hours of the center's employees.  CTS rightly points out that there is no contractual provision in the franchising agreement or elsewhere that explicitly says what the employee hours must be at the center.  (ECF 60-1 at 6 ("Cottman never instructed Plaintiff as to his work schedule or hours or dictated to Mr. Guarini when Plaintiff would work.")).  Ward's rejoinder is that CTS had the right to set the hours for the center in general and that necessarily implicated the hours that the center's employees would have to work. (Pekula Depo at 60:13-20 (noting that Guarani's agreement with CTS required it to be open a certain number of hours as "prescribed" by CTS but stating that CTS never actually prescribed those hours)).

Further, the parties dispute the degree to which a representative from CTS, when visiting a franchise location, could instruct a franchise employee on how to modify his or her performance if it was inconsistent with CTS's standards.  The deposition testimony makes clear that CTS representatives could and did make suggestions to center employees regarding how to perform certain tasks, but it is unclear to what extent those suggestions carried authoritative weight.  (Id. at 33:1- 34:21 ("Well, according to Paul, he might speak to an employee if he

observed an employee doing something that Paul might want to address or correct.")).

These disputes leave a genuine issue of material fact as to whether CTS was Ward's employer and thus whether CTS is liable for discrimination under a theory of respondeat superior.  See Bray v. Marriott Hotels, 110 F.3d 986, 989 (3d Cir. 1997) ("The nonmoving party creates a genuine issue of material fact if he or she provides sufficient evidence to allow a reasonable jury to find for him or her at trial."); see also Holloway v. Pagan River Dockside Seafood, Inc., 2012 WL 4321709, at *3 (E.D. Va. Sept. 19, 2012) ("Whether a party qualifies as an employee of the defendant is normally a factual question within the province of the fact-finder. . . The facts are not sufficient to shut the door on the Plaintiff's argument that he was an employee of the Defendant because there is evidence that the Defendant was heavily invested in and controlled the Plaintiff's work.") (internal alterations and citations omitted).

CTS argues in the alternative that even if CTS is Ward's employer, Ward cannot show that CTS intentionally discriminated against him.  CTS's framing of the issue misses the mark.  If CTS is Ward's employer, then under a theory of respondeat superior, Cottman could be responsible for intentional

discrimination by Guarani, Ward's supervisor.[2]  Thus intentional discrimination by Guarani could be imputed to CTS.  Moody v. Atl. City Bd. of Educ., 870 F.3d 206, 216 (3d Cir. 2017) ("An employee is a supervisor for purposes of respondeat superior liability pursuant to Title VII if he or she is empowered by the employer to take tangible employment actions.") (internal quotation marks omitted).

CTS also argues with respect to the § 1981 claim that it has not interfered with Ward's right to contract and thus cannot be liable under that theory.  CTS's argument assumes that a factfinder would not be able to find that CTS was Ward's employer and thus that CTS did not have an employment contract with Ward.  If a factfinder were to find that CTS was Ward's employer, then it could also find that CTS had an employment contract with Ward and that CTS interfered with the contract by allowing Ward's termination.  Hicks v. Arthur, 843 F. Supp. 949, 955 (E.D. Pa. 1994) (noting that interference with an employment

---

[2] Implicit in this formulation is the understanding that for Ward to prevail, not only would CTS have to be considered Ward's employer, but also Guarini's principal.  The parties do not brief this issue, but the Court notes that the same factual disputes that make summary judgment inappropriate as to whether CTS is Ward's employer would make it equally inappropriate as to whether Guarani was CTS agent.  See Nelson v. Argyropoulous, 2021 WL 4927059, at *8 (S.D.N.Y. Mar. 18, 2021) (acknowledging that there may be circumstances where franchisor controls the day to day operations of a franchisee to such an extent that the franchisee becomes its agent).

contract in the form of firing or demotion could fit the kind of interference contemplated by § 1981); Baldwin v. Twp. of Union, 2005 WL 3588473, at *2 (D.N.J. Dec. 29, 2005) (acknowledging a termination decision as falling within the ambit of § 1981). The Court is not suggesting that Ward has conclusively shown that CTS did interfere with a contract, only that CTS has not met its burden to show that there is no genuine dispute of material fact as to that point.

The Court also holds that there is a genuine issue of material fact regarding whether CTS is Ward's employer for purposes of the FLSA.  As mentioned in this Court's decision denying CTS's motion to dismiss, In re Enter. Rent-A-Car Wage & Hour Emp't Practices Litig., 683 F.3d 462, 469 (3d Cir. 2012) sets forth the factors as to whether a joint employment relationship exists under the FLSA.  Ward, 2019 WL 643605 at *4. Those factors are:

(1)  authority to hire and fire employees;

(2)  authority to promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours;

(3)  day-to-day supervision, including employee discipline; and

(4)  control of employee records, including payroll, insurance, taxes, and the like.

In re Enter. Rent-A-Car Wage & Hour Emp't Practices Litig., 683 F.3d at 469.

As mentioned above in analyzing the non-FLSA claims, the record shows a factual dispute between the parties regarding CTS's involvement and control in hiring decisions and how much CTS's representatives supervised center employees when they visited the center.  With respect to factor one, the agreement between Guarani and CTS makes clear that Cottman has some power over hiring decisions, but the extent of that power both in theory and practice is disputed.  Similarly, for factor two, there is a dispute about whether CTS instructed Guarani on the hours he had to keep his center open and whether that translated into a requirement for employee hours.  Third, there are mixed indications in the record as to what extent representatives from CTS could instruct center employees on how to handle tasks in a safe or correct way.  As for the fourth factor, it is true that it does not appear that CTS dealt with payroll or insurance, but the dispute over its role in hiring and supervisory power makes granting summary judgment inappropriate at this point.

## CONCLUSION

For the reasons expressed above, CTS's motion for summary judgment (ECF 60) will be denied.

An appropriate Order will be entered.


Date: March 29, 2022                    /s   Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.